**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

In re:                                                    )
                                                          )
WARREN I. GREEN,                          )          CHAPTER 7
                                                          )          CASE NO. 13-10204-MSH
                              Debtor.            )
                                                          )
_____

**TRUSTEE'S MEMORANDUM IN SUPPORT OF HER OPPOSITION**
**TO DEBTOR'S MOTION TO AMEND SCHEDULES A AND C**

Kathleen P. Dwyer, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of

Warren I. Green (the "Debtor") files this memorandum in support of the Trustee's

Preliminary Opposition to the Debtor's Motion to Amend Schedules A and C (the

"Opposition").  As set forth below, the Court should not allow the Debtor to amend Schedules

A and C to include an interest and exemption in the property located at 287 Langley Road,

Unit 39, Newton Massachusetts, 02459 (the "Condominium") pursuant to Mass. Gen. Laws c.

188, as the Condominium is held in a resulting trust and therefore not eligible for the

protections of the Massachusetts Homestead Act (the "Homestead Act") in effect on April 24,

2006 when Marsha Green ("Marsha") recorded a declaration of homestead.  Even if the

current Homestead Act were to apply, it is equally unavailing, as the Debtor does not have a

titled interest in property necessary to claim a homestead exemption.  Furthermore, the Debtor

should be judicially estopped from amending Schedules A and C to include an interest and

exemption in the Condominium as he is only now amending his Schedules after a

Massachusetts Superior Court ruled that the Debtor intentionally attempted to avoid known

creditors by having his wife, Marsha Green ("Marsha"), purchase the Condominium solely in

1

her name by utilizing a substantial portion of the Debtor's assets.  For these reasons, this

Court should deny Debtor's Motion to Amend Schedules A and C (the "Motion to Amend").

## FACTUAL BACKGROUND

On January 16, 2013, the Debtor filed a voluntary petition pursuant to Chapter 7 of the

Bankruptcy Code (the "Bankruptcy Petition"), Schedules, and Statement of Financial Affairs.

[Bankr. Docket No. 1].  As filed on January 16, 2013, Schedule A did not list the Condominium.

Id.  On July 2, 2013, the Court granted the Debtor a discharge.  [Bankr. Docket No. 34].  On

January 30, 2014, the Trustee filed an adversary proceeding against Marsha, the wife of the

Debtor, seeking a declaration that the Condominium, held nominally in the name of Marsha, is

subject to a resulting trust in favor of the Debtor and Marsha as tenants by the entirety [AP No.

14-01026] (the "Adversary Proceeding").  [Bankr. Docket No. 45].

On February 25, 2014, Marsha filed a motion to dismiss the Adversary Proceeding,

alleging the existence of a "prior pending action" in the Middlesex Superior Court [Docket No.

MISUCV2011-002897] (the "Superior Court Action").  [Adversary Docket No. 17].  On April 9,

2014, a hearing on the motion to dismiss was held in which the Court (Hillman, J.) directed the

parties to proceed with the Superior Court Action:

> [F]irst of all, I don't want to dismiss this AP because ultimately perhaps there will
> be something for the Trustee to reach. But at the same time, I don't want to have
> you people running in two courts doing the same thing. So what I'd like to do is
> just continue this motion to dismiss generally and when the state court does
> something, then one of you will get back to me and tell me what to do as the next
> thing.

[Adversary Docket No. 28].  The parties proceeded to complete discovery on the

resulting trust claim in the Superior Court Action and the case was ultimately reached for

trial in April 2016.  A four-day jury waived trial took place in the Superior Court Action

2

between April 27, 2016 and May 18, 2016.  Closing arguments were completed on May

18, 2016.

The Court (Fahey, J.) announced its decision in open court on June 27, 2016 in

favor of the Trustee imposing a resulting trust on the Debtor's interest in the

Condominium.  The Superior Court then issued written Findings of Fact, Conclusions of

Law and Order of Judgment (the "Decision") on August 30, 2016.  [Motion to Amend

Ex. 2.]  The Court entered Judgment (the "Judgment") on September 7, 2016 in favor of

the Trustee on the resulting trust claim.  On September 28, 2016, Marsha filed a notice of

appeal from the Judgment (the "Appeal").  The Appeal is pending with the Massachusetts

Appeals Court (Docket #2016-P-1561).  Appellant's brief is due on March 28, 2017.

[App. Ct. Docket No. 3].  Having obtained the adverse ruling that he held an equitable

interest in the Condominium through a resulting trust with his wife, only now, nearly four

(4) years after the Bankruptcy Petition, the Debtor filed the present Motion to Amend for

the purpose of attempting to schedule the Condominium as an asset and seeking to

exempt all of the equity in the Condominium to the detriment of creditors in this case.

[Bankr. Docket No. 61].

## ARGUMENT

**A. The Debtor Cannot Amend His Schedules to Include and Exempt the Condominium
as the Homestead Act in Effect as of April 24, 2006 is Not Applicable to Property
Held in Trust**

The Debtor cannot amend his Schedules pursuant to Mass. Gen. Laws c. 188, as the

Homestead Act in effect at the time Marsha filed a declaration of homestead did not apply to

property held in trust—including a resulting trust.  The only declaration of homestead of record

3

for the Condominium, and the one the Debtor relies upon in asserting his homestead exemption, was recorded by Marsha, in her individual capacity, on April 24, 2006 prior to the substantial amendments to the Homestead Act that became effective March 16, 2011.  [Motion to Amend Ex. 1].  At the time of the recording of the homestead, legal title to the Condominium was held by Marsha individually.  [Motion to Amend Ex. 1].  Prior to March 16, 2011, Mass. Gen Laws c. 188 §1 provided:

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence.

Furthermore, the statute provided, "an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common . . . ."  Expressly absent from the Homestead Act is any reference to property held in trust.[1]

In fact, the Supreme Judicial Court, when presented with a certified question from the Bankruptcy Court concerning the applicability of the Homestead Act, effective as of October 26, 2004, to property held in trust, answered that a "holder of a beneficial interest in a trust which holds title to real estate and attendant dwelling in which such beneficiary resides" *may not* "acquire an estate of homestead in said land and building under G.L. c. 188, § 1[.]"  Boyle v. Weiss, 461 Mass. 519, 519-520 (2012). As the Supreme Judicial Court further noted in Boyle, "because the debtor's homestead declaration was not valid when recorded initially, it cannot be deemed to have been 'in effect on the effective date of [the 2010 act].'"  Boyle, 461 Mass. at 526 n.15.  In so doing, the Boyle Court expressly rejected the Debtor's argument that her homestead

---

[1] In its present form, effective as of March 16, 2011, Mass. Gen. Laws c. 188 § 1 provides, "'Owner', a natural person who is a sole owner, joint tenant, tenant by the entirety, tenant in common, life estate holder or **holder of a beneficial interest in a trust**." (emphasis added).

declaration was exempt from the Mass. Gen. Laws. c. 188 §5(a)(4) execution requirement based on the enacting language of the 2010 Homestead Act providing: "existing estates of homestead continue to remain in full effect notwithstanding their failure to comply with the law's execution requirements . . . ." Id. Accordingly, the Supreme Judicial Court has made clear that the current Homestead Act does not make valid otherwise previously non-conforming homestead declarations with respect to property held in trust.

Here, the Debtor only maintains an equitable interest in the Condominium through the resulting trust imposed by the Superior Court. [Motion to Amend Ex. 2]. As articulated by the Superior Court, the Condominium was to deemed be held in a resulting trust "at all times since April 17, 2006, including as of January 16, 2013, the date of Warren I. Green's Chapter 7 bankruptcy filing." As the Bankruptcy Court stated in In re Sullivan, 550 B.R. 163, 170 (Bankr. D. Mass. 2016), when considering the application of a homestead exemption to property held in a resulting trust, "under the prior version of the Massachusetts Homestead Statute, there is little question that the Debtor's equitable interest could *not* be exempted." (emphasis in original). Because the Homestead Act in effect as of 2006 did not allow a homestead exemption in property held in trust—including a resulting trust—and based on the fact that the Debtor's equitable interest in the Condominium is held solely through a resulting trust, the Debtor cannot amend his Schedules to include a homestead exemption in the Condominium.[2]

---

[2] The Trustee does not concede that a resulting trust qualifies for trust protection under the current Homestead Act. As noted by the Bankruptcy Court in In re Sullivan, supra at 169, it appears that the Supreme Judicial Court has yet to rule on this issue. Although Judge Boroff found that the term "trust" as used in the current Homestead Act extends to resulting trusts, the Trustee respectfully disagrees. Given the substantial burden of proof and indicia of fraud generally required to impose a resulting trust, particularly with respect to inter-spousal transfers, the Trustee maintains that there are sound public policy reasons not to extend homestead protection to resulting trusts. It should

**B.  Even if the Current Homestead is Operative, the Debtor is Not Entitled to Claim an Exemption as a Non-titled Owner**

Even if the Court were to apply the Homestead Act effective as of March 16, 2011, the Debtor still cannot claim an exemption in the Condominium, as the Homestead Act requires a titled interest in property. The current Homestead Act provides in pertinent part:

> [a]n estate of homestead to the extent of the declared homestead exemption in a home may be acquired by 1 or more owners who occupy or intend to occupy the home as a principal residence. The estate of homestead shall be created by a written declaration executed and recorded in accordance with section 5.  A homestead declaration shall benefit each owner making the declaration and that owner's family members who occupy or intend to occupy the home as their principal residence. The homestead *rights of non-titled family members* shall consist of the right to use, occupy and enjoy the home as their principal residence."

(emphasis added) Mass. Gen. Laws c. 188 § 3(a).

In the present case, the Debtor held no legal interest in the Condominium as of April 24, 2006, the date Marsha recorded a declaration of homestead.  [Motion to Amend Ex. 2].  In fact, the Debtor did not hold any legal interest in the Condominium even as of the date of the Bankruptcy Petition.  The Debtor only acquired an equitable interest in the Condominium through a resulting trust.  Therefore, as the Debtor was not a titled owner of the Condominium as of the Petition Date, even under the current Homestead Act, the Debtor cannot claim a homestead exemption.  Also, as noted above, even if the current Homestead Act were to apply, the Debtor's equitable interest is not entitled to trust protection because the 2006 filing was not valid for that purpose as it was made by Marsha individually.

---

be noted that In re Sullivan involved the highly unusual situation where the parties stipulated to all of the facts

**C. The Debtor Should be Judicially Estopped from Amending Schedules A and C of his Bankruptcy Petition and Claiming a Massachusetts Homestead Exemption in the Condominium**

Moreover, the Debtor should be judicially estopped from claiming any interest or exemption in the Condominium as the Motion to Amend is entirely inconsistent with the Debtor's representations made under oath in his original schedules, the Debtor's representations in the Adversary Proceeding, and the Debtor's testimony under oath in the Superior Court Action.  In the main bankruptcy case, the Debtor received the benefit of a discharge and the automatic stay which prevented Attorney Snider from pursuing collection of his judgment against the Debtor.  To allow the Debtor to disclaim his prior position of never having any interest in the Condominium, especially after the Superior Court held that the Debtor intentionally concealed his interest in the Condominium in order to avoid known creditors, is tantamount to fraud and should not be authorized by this Court.

"It is a generally recognized proposition that one cannot play 'fast and loose with the courts.'"  Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F. 2d 570, 571 (1st Cir. 1993) (determining debtor should be judicially estopped from asserting prepetition claims) (citing Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F. 2d 208, 212 (1st Cir. 1987). Remarkably, that is precisely what Debtor is attempting to do with his present Motion to Amend. Nearly four years after the Petition Date, the Debtor is attempting to amend his Schedules to claim an interest in the Condominium only after he and Marsha failed in the Superior Court Action with their position that the Debtor never held any interest in the Condominium and after

---

necessary for the court to make a resulting trust finding and there was no indicia of fraud upon any creditors.

the expenditure of substantial judicial resources by the Superior Court and the incurrence of

significant administrative expense by the Chapter 7 Trustee.

While the Trustee is cognizant of the Supreme Court's ruling in Law v. Siegel, 134 S. Ct.

1188 (2014), the present request for judicial estoppel is distinguishable from the bankruptcy

trustee's attempt to surcharge the debtor's property in Siegel.  See Law v. Siegel, 134 S. Ct. at

1192.  As articulated in In re Rehman, 479 B.R. 238, 244 (Bank. D. Mass. 2012), concerning a

debtor's omnibus objection to proofs of claim, judicial estoppel "'is intended to protect the

judicial system, rather than the litigants.'" (citing Jethroe v. Omnova Solutions, Inc., 412 F.3d

598, 600 (5th Cir. 2005)); see also New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808

(2001).  Here, the relief sought by the Trustee is not individual in nature but relates to the

Debtor's overall manipulation of the judicial process.[3]  In the present case, the Bankruptcy

Court, in the Adversary Proceeding, directed the parties to litigate the resulting trust claim in

Superior Court and report after the conclusion of the Superior Court Action.  [Adversary Docket

No. 28].  During a hearing on the Motion to Dismiss filed in the Adversary Proceeding on April

9, 2014, Judge Hillman stated, "I don't want to dismiss this AP because ultimately perhaps there

will be something for the Trustee to reach." [Adversary Docket No. 28].  Only after receiving an

adverse ruling in the Superior Court is the Debtor now attempting to re-write his Schedules to

continue to intentionally avoid his known creditors.  Significantly, the Debtor has not heretofore

notified any Court that he would take this tact in the event of an adverse ruling, albeit doing so in

the present instance, purportedly without prejudice to the appeal filed by his wife.

---

[3] Not only is the Debtor attempting to take inconsistent positions within the Bankruptcy case, he is also attempting to take inconsistent positions in the Adversary Proceeding, the Massachusetts Superior Court and the Massachusetts Appeals Court.  Presently, Marsha has appealed the Superior Court's Decision that the Condominium is held in a resulting trust as tenants by the entirety.

Subsequent to Judge Hillman's decision, there were numerous pretrial hearings in the Superior Court case which culminated in a four day trial, a separate day of closing arguments, 56 trial exhibits, a further hearing in which the Superior Court dictated preliminary findings and addressed post trial matters, and the issuance of a 17 page Decision and Judgment.  While the record speaks for itself, the substantial judicial resources that were consumed during the approximately 5-year life cycle of the resulting trust claim in Superior Court and should not be overlooked.  Allowance of the Debtor's Motion to Amend would effectively eviscerate all of the work, time, and efforts of the Superior Court and should not be permitted.  The Debtor's rather cavalier approach to accomplish this result should be of particular concern to this Court since it made the decision to have the Superior Court resolve the matter, rather than have the parties litigate the resulting trust claim in the Adversary Proceeding.

In order to establish judicial estoppel, a party must establish three elements:

> First, a party's earlier and later positions must be clearly inconsistent.  Second, the party must have succeeded in persuading a court to accept the earlier position. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court.

Perry v. Blum, 629 F.3d 1, 9 (1st Cir. 2010) (internal citations omitted).  See also RFF Family P'ship, LP v. Ross, 814 F.3d 520 (1st Cir. 2016) (applying same elements to assess applicability of judicial estoppel).

It is undisputed that the position taken by the Debtor in the Motion to Amend is entirely inconsistent with the Debtor's original position taken within the bankruptcy case as reflected in Schedule A and in the Adversary Proceeding.  As articulated in In re Angelo, 480 B.R. 70, 94-95 (Bankr. D. Mass. 2012), in which the court judicially estopped a debtor from taking contrary

positions concerning a debtor's disclosure of claims against third parties, the Debtor's omission of any interest in the Condominium on his original schedules was not an innocent oversight "nor the result of excusable neglect but part of a thoroughgoing pattern of deception and exclusion in this bankruptcy case." Here, the Superior Court Decision clearly established that the Debtor did not claim an interest in the Condominium only as a means of intentionally avoiding known creditors. The Court rejected any notion that the Debtor gifted his interest in the proceeds from the sale of his prior jointly owned residence. As articulated by the Decision, "[w]hen they intentionally put the Condominium in only Marsha's name, the Greens were both well aware that Warren had current creditor Attorney Snider, and potential creditor Northstar. The primary reason they did so was to avoid those creditors; to a lesser extent, if they could avoid future creditors, they sought that too." [Motion to Amend Ex. 2]. Only now, after the adverse Superior Court Decision, is the Debtor attempting to amend Schedules A and C to include his interest in the Condominium and apply a homestead exemption—a change in position based solely upon the "exigencies of the moment." See New Hampshire, 532 U.S. at 750 (internal citations omitted).

Second, by the Court accepting the original schedules of the Debtor in granting the Debtor protection of the automatic stay and a discharge, the second element of judicial estoppel

has been satisfied. [4]  "In bankruptcy, where relief is often conferred either automatically (as with

the automatic stay) or by default (as with a chapter 7 discharge, when no one objects to

discharge), this requirement has functioned less stringently in its application to debtors who have

played fast and loose with the courts."  In re Angelo, 480 B.R. at 95.  As the Angelo court further

provided, "in both instances, the discharge and the stay, relief enters on the assumption that a

debtor has been accurate and truthful in his or her dealings with the court.  This is part of the

quid pro quo of bankruptcy."  Id.  In short, in a bankruptcy case the element of persuading the

Court to accept the earlier position is far less stringent than in general litigation and is satisfied

here through the protection afforded the Debtor by the automatic stay and the granting of a

discharge.  This is particularly true where the Debtor attempted to conceal an asset from his

creditors as is the case here.

Here, the Court granted the Debtor the protection of the automatic stay which prevented

Attorney Snider from pursuing collection of his judgment for unpaid legal fees.  By granting the

Debtor the protection of the automatic stay, the Court provided direct relief to the Debtor from

the collection efforts of Attorney Snider.  Even through this alone is sufficient to satisfy the

second element of judicial estoppel, the Debtor was also initially successful in persuading the

Superior Court of his position that he held no interest in the Condominium through a Motion to

---

[4] As the court explained in Guay v. Burack, 677 F.3d 10, 18 (1st Cir. 2010), "[a] bankruptcy court 'accepts' a
position taken in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as
discharge, on the basis of those filings."  Compare In re DiVittorio, 430 B.R. 26, 48 (Bankr. D. Mass. 2010) (judicial
estoppel did not apply where court did not "grant[] the Debtor any relief, such as a discharge[.]").  As further
explained by the court in In re Angelo, even where there is no objection to discharge or litigation concerning
discharge, "in bankruptcy, the requirement of acceptance requires only some award of relief."  In re Angelo, 480
B.R. at 95. Here the Court granted the Debtor relief in the form of discharge on July 2, 2013.  In granting the Debtor
a discharge, the Court accepted the information contained on Debtor's schedules, including the fact that the Debtor
did not claim any interest in real property.

Dismiss filed by the Debtor and his wife which was allowed.[5]  See <u>RFF v. Ross</u>, 814 F.3d at 528

(citing <u>Perry v. Blum</u>, 629 F. 3d at 9) ("[t]o demonstrate acceptance of the prior position by a

court, 'a party need not show that the earlier representation led to a favorable ruling on the merits

of the proceeding in which it was made, but must show that the court adopted and relied on the

represented position either in a preliminary matter or as part of a final disposition.'").  The

resulting trust claim was revived on appeal when the Appeals Court reversed and remanded the

case as to the resulting trust claim only.

Finally, the Debtor will undoubtedly obtain an unfair advantage vis-à-vis his creditors,

including the Trustee, if allowed to amend his Schedules.  As articulated by <u>Guay</u>, "where unfair

advantage exists . . .  it is a powerful factor in favor of applying the doctrine." <u>Guay</u> 677 F.3d at

16-17.  The Debtor's Motion to Amend is a thinly veiled attempt to take two contrasting

positions in a last ditch effort to keep creditors at bay.  On the one hand, the Debtor, through his

wife, is actively appealing the Superior Court Decision and advancing the argument that the

Debtor does not have any interest in the Condominium to avoid having that undisclosed asset

available to creditors.  On the other hand, as set forth in the present Motion to Amend, the

Debtor, while specifically reserving "his rights, and Marsha's, to continue to appeal and contest

the State Court Order," is attempting to claim the Condominium as part of the estate in order to

attempt (albeit improperly) to claim a homestead exemption in the Condominium, thereby

further protecting the asset from creditors.  By allowing the Debtor to continue to assert two

contrary positions, and amend his schedules, the Court would effectively allow the Debtor to

improperly shield assets regardless of the outcome of either the current matter or the Appeals

---

[5] Prior to Debtor's bankruptcy filing, Debtor was a named defendant in a resulting trust action.

Court matter.  Simply put, the Debtor is attempting to manipulate the judicial process to obtain

an unfair advantage over creditors he knew to exist prior to the filing of his Bankruptcy Petition.

Furthermore, while not required, creditors have detrimentally relied on the Debtor's

assertion concerning his lack of interest in the Condominium.  In fact, Attorney Robert Snider, a

primary creditor in this case, detrimentally relied on the Debtor's position that he did not have a

legal interest in the Condominium in pursuing the Superior Court Action to recover from the

Debtor.  Attorney Snider extensively litigated this matter prior to the Trustee's substitution as a

party in this case.  As with Attorney Snider, the Trustee also detrimentally relied upon the

Debtor's existing disclosure that he had no interest in the Condominium in incurring substantial

legal fees and expenses in pursuing the resulting trust claim. To allow the Debtor to reverse

course at this point would be extremely prejudicial to creditors and should not be condoned by

the Court. [6]

## CONCLUSION

The Debtor is improperly attempting "to have his cake and eat it too".  Now that the

Superior Court imposed a resulting trust on the Debtor's interest in the Condominium based on

the Debtor's intent to avoid creditors, the Debtor wants to circumvent that adverse ruling by

playing fast and loose with this Court and claiming Condominium as his asset.  This Court

should not allow the Debtor to engage in conduct which constitutes a clear and substantial abuse

of judicial process, is prejudicial to creditors, and which would allow the Debtor to unfairly and

intentionally shield assets from known creditors.

---

[6] According to the claims register, the claims against the Debtor total $88,482.58.  This does not include an IRS post-petition tax lien of $110,292 and the substantial administrative expenses which accrued in pursuing the Superior Court Action to successful conclusion.

For all of the foregoing reasons, Kathleen P. Dwyer, Chapter 7 Trustee requests that this

Court enter an order:

a.   denying the Debtor's Motion to Amend Schedules A and C; and

b.   Grant any other such relief as the Court deems necessary.

Respectfully submitted,

**Kathleen P. Dwyer, Chapter 7 Trustee, Plaintiff**

By her Attorneys,

_____*/s/ Thomas S. Vangel*_____
Thomas S. Vangel, Esq. BBO # 552386
Anthony R. Leone, Esq. BBO # 681760
Murtha Cullina LLP
99 High Street
Boston, MA  02110
617-457-4000 Telephone
617-482-3868 Facsimile
tvangel@murthalaw.com
aleone@murthalaw.com

Dated:  December 27, 2016

14

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____
In re:                                           )
                                                 )
WARREN I. GREEN,                                 )        CHAPTER 7
                                                 )        CASE NO. 13-10204-MSH
                          Debtor.                )
_____)

## CERTIFICATE OF SERVICE

I, Thomas S. Vangel, hereby certify that on December 27, 2016, a copy of ***Trustee's Memorandum in Support of Trustee's Preliminary Opposition to Debtor's Motion to Amend Schedules A and C*** was served through the Court's electronic filing system on all parties registered to receive electronic notice.

_____*/s/ Thomas S. Vangel*_____
Thomas S. Vangel